## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TAMARA R. on behalf of<br>her minor child, L.R.;<br>WENDILEE WALPOLE LASSITER; and<br>TERRIE KALLAL,<br><br>      Plaintiffs,<br><br>      -vs-<br><br>NATIONAL ARCHIVES AND RECORDS,<br>ADMINISTRATION ("NARA")<br>8601 Adelphi Road, Room 5210<br>College Park, MD 20740-6001,<br><br>DEBRA STEIDEL WALL<br>in her official capacity as Acting Archivist<br>United States and head of NARA<br>8601 Adelphi Road, Room 5210<br>College Park, MD 20740-6001,<br><br>NATIONAL ARCHIVES MUSEUM<br>("National Archives")<br>701 Constitution Avenue NW<br>Washington, DC 20004,<br><br>JOHN DOE 1, a fictitious name,<br>individually and in his official capacity as a<br>police/security officer, National Archives<br>701 Constitution Avenue NW<br>Washington, DC 20004,<br><br>JOHN DOE 2, a fictitious name,<br>individually and in his official capacity<br>as a police/security officer, National Archives<br>701 Constitution Avenue NW<br>Washington, DC 20004,<br><br>JOHN DOE 3, a fictitious name,<br>individually and in his official capacity<br>as a police/security officer, National Archives<br>701 Constitution Avenue NW<br>Washington, DC 20004, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No. 23-cv-365<br><br>**COMPLAINT**<br><br>(Civil Rights Action under<br>First and Fifth Amendments and<br>42 U.S.C. § 2000bb-1) |

JANE DOE 1, a fictitious name,                    )
individually and in her official capacity         )
as a police/security officer, National Archives   )
701 Constitution Avenue NW                        )
Washington, DC 20004,                             )
                                                  )
                  Defendants.                     )

## COMPLAINT

Plaintiffs Tamara R., on behalf of her minor child, L.R.; Wendilee Walpole Lassiter; and Terrie Kallal (collectively referred to as "Plaintiffs"), by undersigned counsel, bring this Complaint against Defendants National Archives and Records Administration ("NARA"); Debra Steidel Wall, in her official capacity as Acting Archivist of the United States and head of NARA; National Archives Museum ("National Archives"); John Doe 1, in his official capacity and individual capacity as a police/security officer for the National Archives; John Doe 2, in his official capacity and individual capacity as a police/security officer for the National Archives; John Doe 3, in his official capacity and individual capacity as a police/security officer for the National Archives; and Jane Doe 1, in her official capacity and individual capacity as a police/security officer for the National Archives (collectively referred to as "Defendants"), and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.      Those who oppose abortion have been the targets of an extraordinary amount of violence and vandalism, especially in the wake of the *Dobbs* decision on abortion. *See* Micaiah Bilger, *Radical Extremists Attacked 230 Churches, Pro-Life Groups in Wave of Pro-Abortion Violence in 2022*, LifeNews.com (Dec. 30, 2022), available at https://www.lifenews.com/2022/12/30/radical-extremists-attacked-230-churches-pro-life-groups-in-wave-of-pro-abortion-violence-in-2022/ (listing 241 incidents in 2022 alone, with links to coverage).

2.       Plaintiffs are all citizens of the United States who have a deep and sincerely held religious belief that unborn babies are created in the image of God, should be protected, and thus, that they should speak up for, and on behalf of, the unborn babies.

3.       The National Archives is located at 701 Constitution Avenue, NW in Washington, DC, and is home to the Declaration of Independence, Constitution of the United States, and Bill of Rights, commonly referred to as the "Charters of Freedom."

4.       On January 20, 2023, each of the Plaintiffs visited the National Archives to view those documents that affirm their God-given right to free speech, expression, and their exercise of religious beliefs.

5.       While in the National Archives, Plaintiffs were subject to a pattern of ongoing misconduct by federal government officials, specifically National Archives security officers, Defendants John Does and Jane Doe, who targeted Plaintiffs and intentionally chilled their religious speech and expression by requiring Plaintiffs to remove or cover their attire because of their pro-life messages.

6.       This case seeks to protect and vindicate Plaintiffs' fundamental and statutory rights under federal law, the First and Fifth Amendments to the United States Constitution, and the Religious Freedom Restoration Act ("RFRA").

7.       Plaintiffs seek the relief set forth in their below Prayer for Relief, including damages, declaratory and injunctive relief relating to Defendants' violation of their clearly established constitutional and statutory rights as set forth in this Complaint.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1346.

9.      This Court has authority to award the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000bb-1, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

10.     This Court has authority to award Plaintiffs their reasonable costs and attorneys' fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988, and the general legal and equitable powers of this Court.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside and/or perform their official duties in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## <u>THE PLAINTIFFS</u>

12.     Plaintiff Tamara R. and L.R. are citizens of the United States and residents of Michigan. Tamara R. brings this action on behalf of her minor child, L.R., age seventeen. Plaintiff L.R. is Catholic and was visiting the National Archives with a group of approximately fifteen students and parents from her Catholic high school, on the date of the events alleged herein.

13.     Plaintiff Wendilee Walpole Lassiter is a citizen of the United States and resident of Virginia. Plaintiff Lassiter brings this action on behalf of herself. Plaintiff Lassiter is a Protestant Christian and was visiting the National Archives with a group of students from her private religious school, Liberty University School of Law, on the date of the events alleged herein.

14.     Plaintiff Terrie Kallal is an adult citizen of the United States and a resident of Illinois. Terrie Kallal is a devout Catholic who supports all that the Catholic Church teaches, especially regarding the protection of innocent babies from being aborted in the womb. Plaintiff Kallal was visiting the National Archives with a relative on the date of the events alleged herein.

## THE DEFENDANTS

15.     Defendant National Archives and Records Administration ("NARA") is an independent Federal agency that preserves and shares with the public those records that trace the story of our nation, government, and the American people. NARA is headquartered at 8601 Adelphi Road, College Park, MD 20740.

16.     NARA carries out its mission through a nationwide network of archives, record centers, and Presidential libraries. NARA maintains the National Archives Museum in Washington, DC.

17.     Defendant Debra Steidel Wall is appointed by the President of the United States and serves as the Acting Archivist and the head of NARA.

18.     Defendant National Archives Museum ("National Archives") in Washington, DC is home to the Declaration of Independence, Constitution, and Bill of Rights and is open for visitors daily from 10 a.m. to 5:30 p.m.

19.     Defendant John Doe 1 (a fictitious name) is a National Archives police/security officer, and at all relevant times herein, was designated with the authority to enforce the rules, regulations, policies, procedures, and/or practices of National Archives and NARA. Defendant John Doe 1 is sued in his official capacity and in his individual capacity for acts and omission occurring in connection with duties performed on behalf of National Archives and NARA.

20.     Defendant John Doe 2 (a fictitious name) is a National Archives police/security officer with the authority to enforce the rules, regulations, policies, procedures, and/or practices of National Archives and NARA. Defendant John Doe 2 is sued in his official capacity and in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of National Archives and NARA.

21.     Defendant John Doe 3 (a fictitious name) is a National Archives police/security officer with the authority to enforce the rules, regulations, policies, procedures, and/or practices of National Archives and NARA. Defendant John Doe 3 is sued in his official capacity and in his individual capacity for acts and omissions occurring in connection with duties performed on behalf of National Archives and NARA.

22.     Defendant Jane Doe 1 (a fictitious name) is a National Archives police/security officer, and at all relevant times herein, was designated with the authority to enforce the rules, regulations, policies, procedures, and/or practices of National Archives and NARA. Defendant Jane Doe 1 is sued in her official capacity and in her individual capacity for acts and omission occurring in connection with the duties performed on behalf of National Archives and NARA.

## FACTUAL ALLEGATIONS

23.     Plaintiff L.R. traveled from her home in Michigan with a group of approximately thirty-five students and parents from her Catholic high school to attend the 50th Annual National March for Life on or about January 20, 2023.

24.     Plaintiff Lassiter traveled from her private religious school, Liberty University, located in Lynchburg, Virginia, to attend the 50th Annual National March for Life on or about January 20, 2023 with a group of roughly 500 people on twelve separate buses. Plaintiff Lassiter was the "bus captain" for her bus, and in charge of ensuring that all original riders made it back on the bus following the conclusion of the March for Life and their trip to Washington, D.C.

25.     Plaintiff Kallal traveled thirteen hours from her home in Illinois to attend the March for Life and to take her granddaughter, who was with her, to some of the National Museums, including the National Archives on or about January 20, 2023.

26.     Plaintiffs L.R., Lassiter, and Kallal did not travel together to attend the March for Life and did not know one another prior to the filing of this lawsuit.

27.     Plaintiff L.R. is a devout Catholic and holds a deeply religious belief that she has a religious and moral obligation to speak out against the abortion of innocent babies. She also holds a deeply religious belief that she has a religious and moral obligation to inform others of her beliefs and be a voice for unborn babies.

28.     Plaintiff Lassiter is a Protestant Christian who holds a deeply religious belief that all life is precious, including the lives of the pre-born children, and that they are human beings from the moment of conception. She believes that she has a moral obligation to speak out against the killing of defenseless pre-born babies, as well as an obligation to inform others about the gruesome nature of abortion.

29.     Plaintiff Kallal is a devout Catholic and believes that she has a moral obligation to speak out against the abortion of innocent babies. She also believes that she has a moral obligation to inform others of her beliefs, including through active participation as a legislative liaison for the Springfield, Illinois Diocesan Council of Catholic Women and through both the National and State March for Life.

30.     Plaintiffs' religious beliefs compel them to speak out against abortion through prayer, education, and support of pro-life causes whenever they have an opportunity to do so.

31.     Plaintiffs' religious beliefs motivated their decision to attend the 50th Annual March for Life event and to express their beliefs by wearing various pro-life attire.

32.     On the day of the March for Life, on or about January 20, 2023, each of the Plaintiffs separately and uniquely decided to visit the National Archives to view our nation's founding documents.

33.     At approximately 10:00 am on January 20, 2023, Plaintiff L.R., along with her mother Tamara R., entered the National Archives building with approximately thirty-five other people from their Catholic school group.

34.     Plaintiff L.R. and her mother, Tamara, along with the rest of their Catholic school group, were part of the first group to enter the National Archives that morning.

35.     Plaintiff L.R. wore a pro-life t-shirt with the message, "Life is a HUMAN RIGHT," and a button on the strap of her bag containing the inscription "Pro-Love is the New Pro-Life."

36.     Various classmates of L.R.'s wore similar or other pro-life attire. Hats worn by some students contained the message, "Life always Wins" or "Pro-Life." Another button worn by classmates said, "Love Saves Lives." A true and correct photograph of Plaintiff L.R.'s peaceful and non-disruptive expressive clothing and that of her classmates is provided below:



37.     Plaintiff L.R., her mother, and her fellow classmates were ushered through security and into the first group of visitors to enter the Rotunda where the Constitution and Bill of Rights are on exhibit.

38.     Upon entering the Rotunda, approximately six National Archives security guards were present in the room. One National Archives security guard, Defendant John Doe 1, provided general instructions to Plaintiff L.R. and others in her group regarding the contents of the room, including instructions that no pictures should be taken because the light from the cameras could damage the documents.

39.     Defendant John Doe 1 was a tall, armed security guard wearing a dark, navy uniform, a bullet proof vest and a knit beanie on his head.

40.     Approximately five minutes later, Plaintiff L.R. and her fellow classmates were suddenly approached by Defendant John Doe 1 who instructed Plaintiff L.R. and her classmates to remove all pro-life attire.

41.     John Doe 1 specifically instructed Plaintiff L.R. that she could not be wearing anything pro-life and that she must cover her shirt and not unzip it until she had left the National Archives.

42.     John Doe 1 also instructed Plaintiff L.R. and her other classmates to remove their pro-life buttons.

43.     John Doe 1 made other classmates standing near Plaintiff L.R. remove their pro-life hats. One such hat contained the inscription, "LIFE always WINS." Another hat contained the inscription, "ProLife."

44.     Plaintiff L.R. witnessed another guard participate in these instructions to her classmates and at no time did any of the other guards in the Rotunda intercede and provide contrary instruction.

45.     Plaintiff L.R., astonished by John Doe 1's instructions – given her close proximity to the very documents that prohibit the government's interference with her First Amendment right to free speech and expression and her free exercise of religion – nonetheless zipped up her jacket and removed her button for fear that she would be thrown out of the National Archives if she did not comply.

46.     Plaintiff L.R. immediately believed her constitutional rights were being violated by the very government officials tasked with protecting them.

47.     As Plaintiff L.R. communicated to a friend via Snapchat while still inside the National Archives, "he told me to take off my pro-life pin as I was standing next to the constitution that literally says Freedom of Speech on it."

48.     Shortly thereafter, Plaintiff L.R. and many of her classmates made their way to the gift shop inside the National Archives whereby she witnessed three different female National Archives employees confront some of her classmates still wearing pro-life clothing or attire and instruct them to remove all of it immediately.

49.     Plaintiff L.R. observed, however, that items available for purchase in the gift shop included several items with expressive statements, including rainbow PRIDE t-shirts and pins.

50.     At approximately 10:20 am on January 20, 2023, Plaintiff Lassiter entered the National Archives with approximately eight other people from her Liberty University School of Law group.

51.     After Plaintiff Lassiter passed through the security metal detector, Defendant Jane Doe 1, a National Archives security guard approximately in her 50s and wearing a dark official uniform, approached Defendant John Doe 2, a tall National Archives security guard, approximately between the ages of 40-55, wearing a dark official uniform, including a bullet-proof vest, radio, and gun.

52.     Defendant Jane Doe 1 gestured to Plaintiff Lassiter while speaking to Defendant John Doe 2, stating "She can't come in here," then stood with her arms crossed.

53.     After a brief conversation with Defendant Jane Doe 1, Defendant John Doe 2 approached Plaintiff Lassiter and stated "You have to take your shirt off. Your shirt will incite others," and "would cause a disturbance. You're disturbing the peace."

54.     Plaintiff Lassiter was wearing a black sweatshirt that read: "I AM THE POST-ROE GENERATION: LAW STUDENTS FOR LIFE," a reference to her affiliation with an on-campus group at her private religious school, Liberty University.

55.     Plaintiff Lassiter was shocked by being told to take her sweatshirt off, and asked for clarification, "I can't come in here unless I take my sweatshirt off?"

56.     Defendant John Doe 2 responded to Plaintiff Lassiter's question by stating: "No, you can't." Plaintiff Lassiter, astonished by John Doe 2's instructions, nonetheless complied with the order and removed her sweatshirt for fear that she would be thrown out of the National Archives if she did not comply. The rest of Plaintiff Lassiter's group also complied with the order.

57.     Plaintiff Lassiter immediately believed her constitutional rights were being violated by the very government officials tasked with protecting them.

58.     While in the National Archives, Plaintiff Lassiter observed at least two other National Archives visitors, a man and a woman, freely walking around while wearing what appeared to be "pro-choice" apparel, with statements to the effect of "My Body, My Choice," and "Pro-Choice.

59.     Plaintiff Lassiter is fearful that the same targeting would occur if she were to visit the National Archives again, and has had nightmares since that time about the incident.

60.     At approximately 10:45 am on January 20, 2023, Plaintiff Kallal, along with her granddaughter who is not named in this complaint, entered the building.

61.     Plaintiff Kallal was wearing a blue t-shirt underneath a black puffy jacket. The blue t-shirt read: "MARCH 4 LIFE 2014: Saint Cecilia's Youth Group, Glen Carbon, IL." Her granddaughter wore a white shirt that read simply: "pro-life generation." A true and correct photograph of Plaintiff Kallal's peaceful and non-disruptive expressive clothing and that of her granddaughter's is provided below:





62.     Plaintiff Kallal observed approximately 12 "burly-looking" security officers at the security

check-point. As Plaintiff Kallal tried to go through security, she was told by Defendant John Doe 3, a

National Archives security officer dressed in all black and what appeared to be a black leather jacket

with patches on it, approximately 5'6-5'7, stocky build, and between 42-46 years of age, that she must

cover up her shirt and any other pro-life apparel she had on. Defendant John Doe 3 stated: "Your clothing is offensive. You must zip up your coats or take off your shirts."

63.     Plaintiff Kallal immediately believed that this was a wrongful order that violated her rights to religious freedom and free speech, but she did not want her granddaughter to miss out on viewing our Nation's founding documents, especially having traveled so far to do so. Thus, Plaintiff Kallal complied with the order and zipped up her jacket to cover her shirt, as did her granddaughter.

64.     Plaintiff Kallal was astonished by Defendant John Doe 3's order, especially considering her purpose at the National Archives was to bring her granddaughter there to see the very documents that serve to protect the freedoms of speech and religious.

65.     As Plaintiff Kallal entered the National Archives, she went to the elevator on the left side of the lobby. The right side was occupied by a large group of students – approximately 30-40 in total – wearing religious pro-life apparel. Plaintiff Kallal observed and heard the students being approached by guards and given orders. The guards stated: "All of you must remove your shirts and hats or cover them up, or you must leave the building."

66.     Plaintiff Kallal heard some of the students respond to the order by stating: "We don't have any other clothing. Just our shirts." Many of the students were young women who were unable to comply with the order owing to modesty concerns.

67.     Plaintiff Kallal heard other students respond that they would rather leave than give up their right to free speech. Plaintiff Kallal observed the whole group of students leave the building.

68.     Plaintiff Kallal believed that what was occurring was wrong, and a violation of the First Amendment, but she was intimidated by the number of security officers around and did not pull her cellphone out to document what was occurring because she was afraid of being arrested and charged as she had been instructed by the guards, in addition to signage, that no photos were allowed.

69.     None of the Plaintiffs' expressive conduct involved verbal or disruptive speech, protest, or signs. Instead, the expressive conduct by all Plaintiffs consisted only of the peaceful wearing of religious pro-life messages.

70.     Plaintiff L.R. will be attending a Catholic college in the Fall of 2023 and plans to be active in the college's Students for Life organization.

71.     Plaintiff L.R. intends to return to Washington, D.C. next year with the Students for Life group to participate in the March for Life and visit the National Archives and other museums; however, Plaintiff L.R. reasonably fears that if she does, Defendants will again, even more harshly, single her out, threaten to remove her from the National Archives and/or force her to cover up or remove her religious, pro-life clothing and attire.

### CAUSES OF ACTION

### COUNT I
**(Violations of the First Amendment – Freedom of Speech)**

72.     The allegations of Paragraphs 1 through 71 above are incorporated by reference herein as if fully set out.

73.     The First Amendment protects private speech and expression from government interference or restriction when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

74.     Plaintiffs' speech and expression enjoys First Amendment protection.

75.     Defendants unlawfully deprived Plaintiffs of their First Amendment rights to engage in protected speech and expression in violation of the Free Speech Clause of the First Amendment.

76.     Defendants' restriction on Plaintiffs' speech is content and viewpoint-based and demonstrates a concerted effort to single out, embarrass, intimidate, exclude, and ultimately silence the message expressed by Plaintiffs in wearing their "pro-life" clothing and other attire.

77.     None of the Plaintiffs' expressive conduct involved verbal or disruptive speech or protest, or signs. Instead, the expressive conduct at issue consisted only of the wearing of pro-life messages.

78.     Defendants' conduct constitutes retaliation against Plaintiffs on the basis of the actual or perceived viewpoint of their protected speech.

79.     Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

80.     Plaintiffs have been and will continue to be harmed as a direct and proximate result of Defendants' violation of their constitutional rights, and Plaintiffs request the relief set forth below in their Prayer for Relief.

**COUNT II**
**(Violation of Fifth Amendment – Equal Protection)**

81.     The allegations of Paragraphs 1 through 71 above are incorporated by reference herein as if fully set out.

82.     The Fifth Amendment to the United States Constitution protects persons against the deprivation of life, liberty, or property without due process of the law and forbids the federal government from denying the equal protection of the laws.

83.     The Fifth Amendment to the United States Constitution guarantees persons the right to be free from illegal discrimination and selective, viewpoint-based scrutiny and enforcement.

84.     Defendants unlawfully deprived Plaintiffs of their Fifth Amendment rights by preventing Plaintiffs from enjoying the National Archives and silencing Plaintiffs to prevent them from expressing a message based on content and viewpoint, because Defendants found their views unacceptable.

85.     None of the Plaintiffs' expressive conduct involved verbal or disruptive speech or protest, or signs.

86.     Defendants caused Plaintiffs to be treated differently than other similarly situated patrons to the National Archives.

87.     The disparate treatment of Plaintiffs based on their viewpoints was a result of a discriminatory purpose on the part of Defendants.

88.     Defendants' disparate treatment of Plaintiffs based on their viewpoints is not rationally related to any legitimate governmental interest.

89.     Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

90.     Plaintiffs have been and will continue to be harmed as a direct and proximate result of Defendants' violation of their constitutional rights, and Plaintiffs request the relief set forth below in their Prayer for Relief.

## COUNT III
### (Religious Freedom Restoration Act)

91.     The allegations of Paragraphs 1 through 71 above are incorporated by reference herein as if fully set out.

92.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb–2000bb-4 ("RFRA"), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

93.     RFRA broadly defines "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

94.     The Supreme Court has explained that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for

religious reasons." *Burwell v. Hobby Lobby Stores, Inc*., 573 U.S. 682, 710 (2014) (citing *Emp. Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 877 (2014)).

95.     None of the Plaintiffs' religious expressive conduct involved verbal or disruptive speech or protest, or signs.

96.     Plaintiffs' sincerely held religious beliefs require them to publicly express their opposition to abortion and their support for the humanity and value of unborn babies. Plaintiffs' compliance with these beliefs is a religious exercise.

97.     Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint imposes a substantial burden on Plaintiffs' religious exercise in violation of RFRA.

98.     Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint does not further any compelling governmental interest.

99.     Defendants' restriction on Plaintiffs' expressive religious activity as set forth in this Complaint is not the least restrict means to accomplish any permissible government interest.

100.     Plaintiffs have no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

101.     Plaintiffs have no adequate remedy at law.

102.     Plaintiffs have and will continue to suffer irreparable injury.

103.     Plaintiffs have been and will continue to be harmed as a direct and proximate result of Defendants' violations of their rights, and Plaintiffs request the relief set forth below in their Prayer for Relief.

## PRAYER FOR RELIEF

Plaintiffs repeat and re-allege all allegations set forth above and incorporate those allegations herein by reference, and Plaintiffs request that this Court grant them the following relief and enter final judgment against Defendants and in favor of Plaintiffs:

A.     Declare Defendants' actions violated Plaintiffs' rights under the First Amendment to the United States Constitution;

B.     Declare Defendants' actions violated Plaintiffs' rights under the Fifth Amendment to the United States Constitution;

C.     Declare Defendants' actions violated Plaintiffs' rights under the Religious Freedom Restoration Act;

D.     Issue an injunction enjoining Defendants, and all those in active concert with them, from unlawfully targeting Plaintiffs, for disparate treatment and particular scrutiny based on content and viewpoint or association;

E.     Award to Plaintiffs damages against Defendants John Does and Jane Doe in their individual capacity for the past loss of their rights protected under the Religious Freedom Restoration Act;

F.     Order Defendants to conduct appropriate training of employees, subject to the Court's approval, such that Defendants' employees' conduct complies with federal law and the United Stated Constitution;

G.     Award to Plaintiffs the costs of this action and reasonable attorney fees; and,

H.     Award such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

DATED: February 8, 2023.

Respectfully submitted,

THE AMERICAN CENTER FOR LAW AND JUSTICE

JAY ALAN SEKULOW
  (D.C. Bar No. 496335)
JORDAN SEKULOW
  (D.C. Bar No. 991680)
STUART J. ROTH
  (D.C. Bar No. 475937)
CHRISTINA (STIERHOFF) COMPAGNONE
  (D.C. Bar No. 1657929)
OLIVIA F. SUMMERS
  (D.C. Bar No. 1017339)

/s/ *Benjamin P. Sisney*
BENJAMIN P. SISNEY
  (D.C. Bar No. 1044721)
201 Maryland Avenue, NE
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: bsisney@aclj.org

ABIGAIL SOUTHERLAND
  (TN. Bar. No. 026608)
625 Bakers Bridge Ave., Suite 105-121
Franklin, Tennessee 37067
Tel. 615-599-5572
Fax: 615-599-5180
Email: asoutherland@aclj.org

EDWARD L. WHITE III
  (D.D.C. Bar No. TX0116)
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Tel. 734-680-8007
Fax. 734-680-8006
Email: ewhite@aclj.org